K9MQnilP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                             20 CR 193 (AKH)
                                       Plea

VITALI NILOV, a/k/a Vitaly
Nilov,

             Defendant.

------------------------------x

                                       New York, N.Y.
                                       September 22, 2020
                                       10:10 a.m.

Before:

                HON. ALVIN K. HELLERSTEIN,

                               District Judge

                        APPEARANCES

AUDREY STRAUSS
    Acting United States Attorney for the
    Southern District of New York
MICHAEL D. LOCKARD
    Assistant United States Attorney

GEORGE A. FARKAS
MICHAEL FARKAS
    Attorneys for Defendant

1           (The Court and all parties appearing telephonically)

2           THE COURT:  I think everyone is present.  This is

3    United States v. Vitali Nilov 20 CR 193.  The government is

4    represented by Michael Lockard, U.S. Attorney, and Mr. Nikov is

5    represented by George Farkas and Michael Farkas.

6           Good morning everyone.

7           MR. FARKAS:  Good morning, your Honor.

8           THE DEFENDANT:  Good morning.

9           THE COURT:  So, Mr. Nilov, I understand that you wish

10   to change your plea from not guilty to guilty.

11          THE DEFENDANT:  Yes.

12          THE COURT:  Is that correct?

13          THE DEFENDANT:  Yes.

14          THE COURT:  In order for me to allow that, I have to

15   put you under oath and ask you a number of questions from which

16   I can make a finding that your plea is voluntary, that you

17   understand the consequences of the plea, and that there is an

18   independent basis in fact to support the plea.  What you tell

19   me must be the truth, the whole truth and nothing but the

20   truth.

21          THE DEFENDANT:  Yes.

22          THE COURT:  If you don't do that, you are going to

23   expose yourself to more punishment.  Do you understand all of

24   that?

25          THE DEFENDANT:  Yes.

1             THE COURT:  And do you wish to go ahead?
2             THE DEFENDANT:  Yes.
3             THE COURT:  Ms. Jones, put Mr. Nilov under oath.
4             (Defendant sworn)
5             DEPUTY CLERK:  Please state your full name for the
6    record.
7             THE DEFENDANT:  Vitali Nilov.
8             THE COURT:  I couldn't hear you.
9             THE DEFENDANT:  Vitali Nilov.
10            THE COURT:  Thank you, Mr. Nilov.
11            The first step in this procedure is to make the
12   findings that are required by the CARES Act.  So I've seen the
13   written consent of Mr. Nilov.  I'm going to ask you, Mr. Nilov,
14   do you consent to proceeding by this telephone hook-up
15   conference?
16            THE DEFENDANT:  Yes.
17            THE COURT:  I want you to understand, Mr. Nilov, that
18   you have the right to be present and next to your lawyer when
19   you enter a plea of guilty or not guilty.  And that you are
20   waiving that right and consenting to proceeding in this virtual
21   fashion.  Is that correct?
22            THE DEFENDANT:  Yes.
23            THE COURT:  It is appropriate that that be done
24   because Mr. Nilov is interested to change his plea from not
25   guilty to guilty.  There is a value to the public and to the

K9MQnilP

government and to the defendant to allow that happen without waiting for an appropriate occasion when the courts could be open and without difficulty, so it's appropriate for me to proceed.

    Secondly, we really don't know when courts will be open for all purposes.  The pandemic still exists.  People are reluctant to come into court even though the court has elaborate proceedings to ensure everyone's safety, but to honor that, we will proceed in this virtual fashion.

    I find also that because of the crowded nature of waiting online for televised proceedings, that it's appropriate to proceed in this telephone procedure.  So you consent to all of that, right, Mr. Nilov?

    THE DEFENDANT:  Yes.

    THE COURT:  And you have no objection, right, Mr. George Farkas?

    MR. G. FARKAS:  I do not.

    THE COURT:  Nor does the government, Mr. Lockard?

    MR. LOCKARD:  No, your Honor.

    THE COURT:  We shall proceed.

    Mr. Nilov, how old are you?

    THE DEFENDANT:  58 years old.

    THE COURT:  Are you married?

    THE DEFENDANT:  Yes.

    THE COURT:  Do you have any dependent children?

1             THE DEFENDANT:  One kid.
2             THE COURT:  How old?
3             THE DEFENDANT:  12 years old.
4             THE COURT:  And he lives with you and your wife?
5             THE DEFENDANT:  Yes.
6             THE COURT:  Are you a citizen of the United States?
7             THE DEFENDANT:  Yes.
8             THE COURT:  Are you aware that one possible
9    consequence of your pleading guilty is a denaturalization
10   proceeding which would take away your citizenship and make you
11   eligible for deportation?
12            THE DEFENDANT:  Yes.
13            THE COURT:  Have you discussed all the implications
14   with your attorney?
15            THE DEFENDANT:  Yes.
16            THE COURT:  And you wish to proceed?
17            THE DEFENDANT:  Yes.
18            THE COURT:  OK.  Coming into today's -- sorry.  Tell
19   me about your education, Mr. Nilov, how much schooling have you
20   had?
21            THE DEFENDANT:  I have high school.  I have four years
22   of education in college as a teacher in physical education, and
23   I was working with kids all my life in gymnastics and in
24   instruction.
25            THE COURT:  Are you comfortable -- I'm sorry, I

K9MQnilP

1    interrupted you?
2             THE DEFENDANT:  Mmm-hmm.
3             THE COURT:  Finish what you were saying.  You were
4    comfortable with kids all your life and what else?
5             THE DEFENDANT:  All my life, yes.
6             THE COURT:  Did you say something else?
7             THE DEFENDANT:  No.
8             THE COURT:  Are you comfortable reading and writing
9    English?
10            THE DEFENDANT:  Yes.
11            THE COURT:  So you are fully able to participate in
12   this proceeding in English without interpretation?
13            THE DEFENDANT:  Yes.
14            THE COURT:  Coming into today, have you taken any
15   medicine or narcotics or alcohol that can blur your thinking?
16            THE DEFENDANT:  No.
17            THE COURT:  Are you clear-minded?
18            THE DEFENDANT:  Am I what?
19            THE COURT:  Are you clear-minded?
20            THE DEFENDANT:  Yes.
21            THE COURT:  Have you discussed this case fully with
22   George or Michael Farkas?
23            THE DEFENDANT:  Yes.
24            THE COURT:  Have you told them everything you know
25   about the case?

1                THE DEFENDANT:  Yes.
2                THE COURT:  Are you satisfied with their services?
3                THE DEFENDANT:  Yes.
4                THE COURT:  Has anyone threatened you in any way to
5    plead guilty?
6                THE DEFENDANT:  No.
7                THE COURT:  No one has threatened you, caused you to
8    be intimidated or made any effort to persuade you to plead
9    guilty?
10               THE DEFENDANT:  No, it's my decision.
11               THE COURT:  It's your own decision based on your own
12   calculation and what's best for you in the circumstances.  Is
13   that correct?
14               THE DEFENDANT:  Correct.
15               THE COURT:  Sorry?
16               THE DEFENDANT:  Yes.
17               THE COURT:  OK.  And you've had the benefit of advice
18   of counsel before you agreed to do that.  Is that correct?
19               THE DEFENDANT:  Yes.
20               THE COURT:  And you are satisfied with counsel?
21               THE DEFENDANT:  Yes.
22               THE COURT:  Are you aware that in order to prove the
23   guilt of Count One of the information that the government must
24   prove your guilt beyond a reasonable doubt and to the
25   satisfaction unanimously of a jury?

1            THE DEFENDANT:  Yes.
2            THE COURT:  Without the ability to so prove, you could
3    not be found guilty of a crime.  Are you aware of that?
4            THE DEFENDANT:  Yes.
5            THE COURT:  And in any criminal proceeding, you would
6    be entitled to representation by a lawyer.  If you couldn't
7    hire a lawyer privately, the government would furnish a lawyer
8    free of charge.  So, in any event, you would have the right to
9    counsel and to have counsel furnished to you.  Are you aware of
10   that?
11           THE DEFENDANT:  Yes.
12           THE COURT:  And with the help of counsel, you could
13   confront all witnesses against you.  You can cross-examine
14   them.  You could summon any witness having information to come
15   to the trial whether the witness wishes do so or not.  And you
16   yourself could testify if you wished to testify, but if you
17   didn't want to testify, you wouldn't have to, and no inference
18   could be raised against you.  Are you aware of all of that?
19           THE DEFENDANT:  Yes.
20           THE COURT:  However, if you plead guilty, you waive
21   your rights to representation and confrontation and
22   cross-examination and you authorize me to sentence you the same
23   way I could sentence you if a jury came to a verdict of guilty
24   against you.  Do you understand that?
25           THE DEFENDANT:  Yes.

1     THE COURT:  All right.  I take it that you are
2  offering to plead guilty to Count One of the information
3  charging you with conspiring to unlawfully export rifle-making
4  equipment without a license in violation of 50 United States
5  Code, Section 4819.  Is that correct?
6     THE DEFENDANT:  Yes.
7     THE COURT:  Have you seen and read that information?
8     THE DEFENDANT:  Yes.
9     THE COURT:  Do you need me to read it to you in open
10  court?
11     THE DEFENDANT:  No.
12     THE COURT:  Now, what are the penalties appropriate
13  for this violation of 50 U.S.C. 4819, Mr. Lockard?
14     MR. LOCKARD:  The charged offense carries a maximum
15  term of imprisonment of 20 years, a statutory maximum term of
16  supervised release of three years, and --
17     THE COURT:  Which will be subject to conditions, a
18  violation of which could lead to a hearing and further
19  punishment.  Are you aware of that, Mr. Nilov?
20     THE DEFENDANT:  Yes.
21     THE COURT:  Proceed please, Mr. Lockard.
22     MR. LOCKARD:  Yes, your Honor.
23     The charged offense also carries a maximum fine of
24  $1 million and a mandatory $100 special assessment.
25     THE COURT:  Are you aware of those punishments?

K9MQnilP

1        THE DEFENDANT:  Yes.

2        THE COURT:  These are statutory punishments provided

3   by the laws of the United States.

4        In addition, we apply the Sentencing Guidelines, and

5   the Sentencing Guidelines are the first step in a sentencing,

6   and it is the judge who applies them and makes the findings.

7   So the analysis of the Sentencing Guidelines appearing in the

8   letter that was given to you, and which you signed, is accepted

9   by the government and by defense counsel, but not by me.  I've

10  not seen it, and I've not made a study yet of how I should find

11  the law, all of which is to say that it is possible that in

12  punishing you, I could disappoint you.  I could go above the

13  guidelines, I could go below the guidelines, or I could

14  disappoint you.  And if I were to disappoint you, and I had

15  accepted your plea, you would be bound by the plea.  You

16  couldn't escape it.  Do you understand that?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Certainly, if your plea ends up in a

19  denaturalization proceeding and in a removal proceeding, you

20  are not able to redo your plea.  Once you make it, you are

21  bound.  Do you understand?

22       THE DEFENDANT:  Yes.

23       THE COURT:  OK.  What are the material propositions

24  that you would have to prove, Mr. Lockard, and how would you

25  prove them?

1        MR. LOCKARD:  Yes, your Honor.

2        The charged offense of conspiracy to violate the
3   Export Control Reform Act has two elements that the government
4   would be required to prove beyond a reasonable doubt.

5        The first element is the existence of an agreement
6   between two or more people to accomplish an object that would
7   be a crime under U.S. law.

8        The second element is that the defendant knowingly
9   joined that agreement understanding its unlawful object, and
10  the object of the charged conspiracy in this case is a
11  violation of the Export Control Reform Act or ECRA, Title 50,
12  United States Code, Section 4819.

13       The elements of that object are:

14       First, the export or attempted export of a commodity
15  from the United States to another country.

16       Second, that the commodity exported or attempted to be
17  exported required a license from the United States Department
18  of Commerce for export to that foreign country or to the
19  recipient.

20       Third, that no such license was issued by the U.S.
21  Department of Commerce.

22       And, fourth, that the defendant acted willfully; that
23  is, understanding that his conduct violated a legal duty or
24  obligation.

25       And the government would also be required to prove

```
 1   venue is proper in the Southern District of New York by a
 2   preponderance of the evidence.
 3            THE COURT:  How would you go about proving those
 4   propositions?
 5            MR. LOCKARD:  At trial, the government would prove
 6   those elements through documentary and testimonial evidence,
 7   including email communications involving the defendant, a
 8   customer of the defendant's located in Russia, and the U.S.
 9   manufacturer of rifling buttons, which are an export controlled
10   commodity that are used in gun manufacturing, also through
11   financial records relating to payment, shipping records
12   relating to shipping, business records relating to obtaining
13   quotes and invoices and purchase orders for the export
14   controlled commodities, as well as testimonial evidence from
15   the manufacturer of the export controlled commodities showing
16   that a Russian customer of the defendant's sought to obtain the
17   gun-making rifling buttons from the U.S. manufacturer and
18   sought to have them exported to Russia; that the defendant in
19   agreement with this customer collected the order of rifling
20   buttons and brought them to the Southern District of New York;
21   and that the defendant then sought to arrange to have those
22   rifling buttons exported to his Russian customer in violation
23   of the licensing requirement.
24            THE COURT:  What is a rifling button?
25            MR. LOCKARD:  A rifling button is a tool that is used
```

1  for machining and is used to bore gun barrels and rifling
2  barrels.
3              THE COURT:  Mr. Farkas, have you reviewed the
4  government proofs?
5              MR. G. FARKAS:  We have, your Honor.
6              THE COURT:  Do you believe that Mr. Lockard can make
7  out a *prima facie* case against your client?
8              MR. G. FARKAS:  We do.
9              THE COURT:  Do you know of any defenses that could
10 trump those proofs?
11             MR. G. FARKAS:  No.
12             THE COURT:  Mr. Nilov, are you offering to plead
13 guilty because you believe that you really are guilty?
14             THE DEFENDANT:  Yes.
15             THE COURT:  Could you tell me what you did to make you
16 guilty?  If you have a statement, you could read it.
17             THE DEFENDANT:  Yes, your Honor.  I have been in the
18 wholesale and shipping business since --
19             THE COURT:  Let me interrupt.  Mr. Nilov, if you look
20 at your paper, it prevents you from speaking loudly.  So if you
21 would hold up the paper and read it and speak into the
22 telephone, the reporter will be able to take down your words.
23             THE WITNESS:  So, start from the beginning?
24             THE COURT:  Yes, please start again.
25             THE DEFENDANT:  I have been in the wholesale and

1  shipping business since 1997 focusing on the purchase and
2  shipment of auto parts for customers in Russia.  In or about
3  2019, a customer for whom I had previously purchased and
4  shipped parts for his auto racing business in Russia, contacted
5  me to arrange for the purchase and shipment of certain tools.
6  I was not familiar with these kinds of tools.
7           THE COURT:  I'm sorry, you were not what?
8           THE DEFENDANT:  I was not familiar.
9           THE COURT:  Yes.
10          THE DEFENDANT:  With these kinds of tools at that
11 time, but I discovered that they could be used for gun-rifling
12 machines.  I was also made aware by the seller of these tools
13 that a U.S. Government license was required before I could
14 export them to Russia.  Ultimately, however, I agreed with my
15 previous customer to ship the tools to Russia without obtaining
16 the export license required by the U.S. Department of Commerce.
17 That's it.
18          THE COURT:  Were you aware that it was a violation of
19 law to ship this particular part without obtaining that
20 license?
21          THE DEFENDANT:  Yes.
22          THE COURT:  And you did it anyhow?
23          THE DEFENDANT:  Yes.
24          THE COURT:  Mr. Lockard, is there anything more you
25 want me to ask?

1    MR. LOCKARD:  Your Honor, the government believes the
2    allocution satisfies the elements.
3    THE COURT:  Say it again loudly.
4    MR. LOCKARD:  The government believes that the
5    defendant's allocution satisfies the elements of the offense.
6    THE COURT:  Mr. Nilov, did any of this occur in
7    Manhattan or the Bronx or Westchester?
8    THE DEFENDANT:  Westchester.
9    THE COURT:  It happened in Westchester County?
10   THE DEFENDANT:  Yes.
11   THE COURT:  OK.  So venue is satisfied.
12   Mr. Farkas, is there anything more you want me to ask?
13   MR. G. FARKAS:  No, your Honor.
14   THE COURT:  Mr. Nilov, I find that you are guilty of
15   Count One of the information.  I find that your plea is
16   voluntary and that you know what you are doing when you pled
17   guilty, and I find that you understand the consequences of the
18   plea, and I find that there is an independent basis in fact to
19   support the plea.
20   Accordingly, I instruct the Clerk to enter your plea
21   of guilty in place of your previous plea of not guilty; that
22   is, you are guilty of the information notwithstanding your
23   earlier plea of not guilty to the indictment.
24   Mr. Lockard, has Mr. Nilov pleaded to the information?
25   MR. LOCKARD:  Before?  Yes, he has previously entered

1   a not guilty plea to the information, your Honor.
2            THE COURT:  And did he understand that he was waiving
3   his right to be before a grand jury?
4            MR. LOCKARD:  Yes, your Honor.  Mr. Farkas can confirm
5   that Mr. Nilov executed a waiver of indictment form and
6   acknowledged his right to be indicted by a grand jury.
7            THE COURT:  All right.  That means I've covered all
8   the bases.  And I think I have made the appropriate findings.
9            If there are no objections, we will proceed to assign
10  a sentencing date.  Ms. Jones.
11           DEPUTY CLERK:  January 5, 2021 at 11:00 a.m.
12           THE COURT:  Is that satisfactory, Mr. Farkas?
13           MR. G. FARKAS:  Yes, your Honor.
14           THE COURT:  Mr. Lockard?
15           MR. LOCKARD:  Yes, your Honor.
16           THE COURT:  I ask you, Mr. Lockard, to purchase a copy
17  of the transcript and to give it to the probation officer
18  before he conducts any interview of Mr. Nilov, and I instruct
19  the probation officer before he conducts any interview of
20  Mr. Nilov to give Mr. Farkas notice so Mr. Farkas will be able
21  to attend if he wishes to.
22           I think that's it, folks, and I thank you and we can
23  close this meeting.
24           DEPUTY CLERK:  Mr. Lockard, this is Brigitte.  Call
25  me.  I have to ask you a question.

K9MQnilP

1          MR. LOCKARD:  I will.
2          DEPUTY CLERK:  Thanks.
3          THE DEFENDANT:  Thank you, everyone.
4          THE COURT:  We can all leave the meeting.  Thank you
5 very much.
6          (Adjourned)